*In re* GUTHRIE'S ESTATE.

SMITH *v.* HOPPE.

1. WILLS—MENTAL COMPETENCY—QUESTION FOR JURY.
   Where evidence as to testator's mental competency to make will was in dispute, issue was properly left to jury.

2. SAME—NEW TRIAL—WEIGHT OF EVIDENCE.
   Where issue as to testator's mental competency to make will was presented by evidence, jury's finding of competency may not be set aside by Supreme Court unless contrary to weight of evidence.

3. APPEAL AND ERROR—TRIAL—INSTRUCTIONS—CURING ERROR.
   Where, in will contest case, contestants' counsel, noticing error in court's instruction in reference to testimony given by doctor, was given opportunity to present request in regard thereto to court, he was not deprived of any right in not being permitted to state said request in hearing of jury.

Appeal from Washtenaw; Sample (George W.), J. Submitted January 19, 1932. (Docket No. 172, Calendar No. 35,502.) Decided March 2, 1932.

Paul G. Schaible presented for probate the last will of James H. Guthrie, deceased. Ada Fahrner and another objected to its allowance. Judgment for contestants. Alma Smith and others, beneficiaries, appealed to the circuit court. Verdict and judgment for proponents. Contestants appeal. Affirmed.

*Adams & Van Horn* and *Frank B. Devine*, for proponents.

*Cavanaugh & Burke, Louis E. Burke,* and *Jacob F. Fahrner,* for contestants.

WIEST, J. This is a will contest on the grounds of mental incompetency and undue influence.

Testator was a bachelor and contestants are relatives. The will was disallowed in the probate court and allowed by a jury in the circuit court. Testator had cancer of the prostate gland. He was, and for years had been, a director of the Farmers & Merchants bank of Chelsea. The will was prepared at his request by the president of the bank.

Upon appeal, contestants allege that the verdict was against the great weight of evidence, that the court erred in instructions to the jury, and in refusing to permit counsel to state an oral request in the presence of the jury. Testator died February 20, 1930, at the age of 79 years. Twenty days before his death he made the will in contest. The will was very short and simple in its provisions. The nature of the disease occasioned him great pain, and opiates were administered, except on the day the will was executed. No one questioned the testator's mental competency before he was confined to the house by his disease. The evidence of mental incompetency consisted of erratic statements, wandering conversations, failure to recognize relatives and acquaintances, inability to understand where he was, hallucinations or imaginations about animals in his room, and the idea that he was being restrained of his liberty. This was met by testimony of long-time acquaintances, who visited testator during his last sickness both before and after execution of the will, and, except for physical weakness, found him able to carry on conversations without wandering, and that he was possessed of his mental powers.

The evidence presented an issue of fact upon the question of mental competency of the testator at the time of the execution of the will, and we are unable to find the verdict contrary to the weight of the evidence.

There was no evidence of undue influence. The instructions to the jury were lengthy, and, as a whole, more favorable to contestants than they could demand.

It is contended that the court was in error in singling out one witness and making the following mention of his testimony:

"It is my remembrance of the testimony in this case that the doctor testified that the disease for which he treated him was not a mental disease. The jury will know whether that is a fact or not, but that is my remembrance of the testimony."

The doctor had testified that any disease of a debilitating nature affects the mind, and, in his opinion, testator was "mentally unsound" during the latter weeks of his life.

The error of the court was noticed by counsel for contestants, and, at the close of the instruction, leave to make an oral request was asked. The court stated:

"I want to hear it before you state it before the jury."

The court listened to the request, and then gave the jury the following additional instruction:

"I did say something to the jury about the question that the disease with which the deceased later on died of, or was sick at this time, was not a mental disease. As I remember the doctor's testimony, it was a physical ailment. Of course, since I called attention to the testimony of Dr. Bush, I think that

it would be no more than fair to say that you·are to consider his testimony, the testimony to the effect that the mind arises and falls in its capacity of the bodily ailments and that the doctor did testify at one time about a period from which he regarded the deceased as not being competent to make a will, perform the act that he is alleged here to have performed; that is, the making of a will. Of course, I don't want to draw the jury's attention particularly to any testimony in this case. I want you to consider all the testimony and give all of the testimony in the case its proper place. The business of a jury is to— I so often repeat that that it seems to me it has become a part of my daily conversation—that the business of a jury is to find out what the truth is in the case. That's the sole business, if you have to eliminate every one's testimony except one to determine what the truth is in the case. You have a right to draw reasonable inferences from the testimony in your determination; you have a right to believe that a witness is telling the truth or to find that he is telling an untruth, and if you find that he is untruthful, you have a right to disregard entirely his testimony or believe it in part and disregard it in part. In fact, the credibility of all witnesses is for the jury.''

Counsel for contestants thinks he was deprived of a right in not being permitted to state his request in the hearing of the jury. We do not think so.

We find no reversible error. Affirmed, with costs to proponents.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and BUTZEL, JJ., concurred.